ANTHONY ASEBEDO (State Bar No. 155105)
**MEEGAN, HANSCHU & KASSENBROCK**
Attorneys at Law
11341 Gold Express Drive, Suite 110
Gold River, CA  95670
Telephone:  (916) 925-1800
Facsimile:  (916) 925-1265

Attorneys for Eric J. Nims,
Chapter 7 trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

[Modesto Division]

| | |
|---|---|
| In re:<br><br>RAMON LOMELI,<br>and MARIA LOMELI,<br><br><br>                                    Debtors. | Case No. 14-90358-E-7<br>Docket Control No. MHK-4<br><br>DATE:  December 18, 2014<br>TIME:   10:30 a.m.<br>DEPT.: E (1200 "I" St., Ste. 4,<br>Modesto CA)<br>**Hon. Ronald H. Sargis** |

**TRUSTEE'S REPLY TO OPPOSITION
OF DEBTORS TO MOTION FOR CIVIL CONTEMPT**

Eric J. Nims (the "Trustee"), as the trustee for the above-captioned chapter 7 case of Ramon Lomeli and Maria Lomeli (the "Debtors"), hereby replies to the Opposition of Debtors to Trustee's Motion for Civil Contempt, filed December 4, 2014 (the "Opposition").

**I.  SUMMARY OF REPLY**

The Opposition is supported by no evidence to rebut the Trustee's evidence of the Debtors' civil contempt.  Instead, the Opposition offers three arguments that attempt to direct the court's attention away from the facts relevant to this proceeding, namely whether the Debtors violated a specific and definite order of this court.  The Trustee therefore requests that the Trustee's Motion for Remedies for Debtors' Civil Contempt (the "Motion") be granted.

/ / /

## II. ARGUMENT

A. <u>The Debtors Have Offered No Evidence to Rebut the Trustee's Evidence of the Debtors' Contempt.</u>

In support of the Motion for Remedies for the Debtors' Civil Contempt (the "Motion"), the Trustee has submitted evidence clearly establishing the following facts:

    a. Among the assets of the Debtors' estate is the real property commonly known as 4203 Tapestry Way, Turlock, California (the "Residence"). <u>See</u> Request for Judicial Notice (Dkt. 63; "RJN"), Exh. 1 (A- and D-Schedules).

    b. The Trustee questioned the existence of a second deed of trust that the Debtors identified against the Residence, and the Debtors amended their schedules to delete it. RJN Exh. 2 (Declaration of Anthony Asebedo, at ¶ 3), Exh. 3 (Debtors' Amended A-Sched. and D-Sched., filed 9/24/14).

    c. Given the valuations and claims scheduled by the Debtors, there is about $144,000 of non-exempt equity in the Residence. <u>See</u> RJN Exhs. 1, 3.

    d. On the Trustee's earlier motion (Docket Control No. MHK-3), this court issued an order dated September 8, 2014 (the "Order") that provides in relevant part as follows:

> IT IS ORDERED that the Debtor . . . shall provide access to the [Residence] to the Chapter 7 Trustee and the representatives and the professionals designated by the Chapter 7 Trustee, at September 8, 9, or 11, 2014, at 2:00 p.m., <u>and such other reasonable times thereafter as requested by the Trustee</u>.

RJN Exh. 5 (emphasis added).

    e. Copies of the Order were served on the Debtors and counsel. <u>See</u> RJN Exh. 5 (Order and BNC proof of service); Mr. Lomeli acknowledges having read the Order. <u>See</u> Debtor's Declaration in Support of Opposition to Motion by Trustee (Dkt. 72), ¶ 1.

    f. After the Debtors failed to provide access on any of the specific dates and times set forth in the Order, the Trustee requested further relief, and the court entered a second order that provides for the Debtors to provide access to the

Residence on October 9, 2014.  See Declaration of Eric J. Nims in Support of Motion ("Nims Declaration;" Dkt. 64), at Exh. 2 (order dated Oct. 3, 2014; Dkt. 65).

   g. At a meeting with the Trustee and his broker on October 9, 2014, Maria Lomeli told the Trustee's broker that she would not cooperate with the broker's efforts to market the Residence.  See Declaration of Bob Brazeal in Support of the Motion (Dkt. 66), ¶ 8.  The Debtors thereafter ignored the broker's subsequent phone messages intended to obtain reasonable access to the Residence.  Id. ¶ 6.

   h. Given the Debtors' statements and failure to respond to the broker's phone messages, the Trustee wrote to the Debtors to reinforce that the Debtors have a statutory duty as chapter 7 debtors not to impede the Trustee's reasonable steps to sell the Residence, and a duty to comply with the Order.  Nims Declaration, ¶ 4 & Exh. 3.

   i. Given the Debtors' failure to respond to the broker's phone messages, the Trustee's counsel requested that the Debtors' counsel assist in obtaining the Debtors' cooperation.  In response to specific written and oral requests, the Debtors' counsel told the Trustee's counsel that the Debtors would not cooperate, and instead counsel represented first that the case would be converted to chapter 13, and later that the Debtors would file a motion to convert the case to chapter 11.  See Declaration of Anthony Asebedo in Support of Motion (Dkt. 68), ¶¶ 3-8.

   j. Given the representations of the Debtor's counsel, the Trustee refrained from taking further steps to market the Residence, but when weeks passed without any action by the Debtors or further communication from the Debtors' counsel, the Trustee filed the present Motion, on November 18, 2014.

  The Debtors have responded to the Motion with the Opposition and three declarations in support thereof.  The declarations filed by the Debtors offer no facts to contravene any statement of fact listed above.  As discussed below, they consider only matters that are irrelevant to the relief requested.

/ / /

**B.** **Rather than Rebut the Facts Established by the Trustee, the Debtors Offer a Series of Distractions.**

Given their apparent inability to provide evidence relevant to the relief requested, the Debtors resort to three arguments that are simply distractions.

### 1. The Trustee's Alleged Statements to Real Time Resolutions.

The Debtors first claim that the Trustee represented to Real Time Resolutions ("RTR"), which filed and amended Proof of Claim No. 1 as the agent of JP Morgan Chase Bank, that the court "required" RTR to amend Proof of Claim No. 1. This allegation is made by the Debtors' counsel, who purports to recite statements of one Tiffany Thompson. The statements of Ms. Thompson, however, are hearsay not within any exception, and therefore the Trustee hereby objects to their use in this proceeding. Fed. R. Evid. 802, 805.

Should the court wish to take admissible evidence on the issue of the Trustee's statements to RTR, the Trustee stands ready to testify and rebut any admissible evidence that the Debtors might bring. But ultimately the Debtors' allegations regarding statements to RTR are not relevant to the issues in this proceeding. The RTR claim is, as explained below, an allowed unsecured claim in this bankruptcy case, and the Trustee, pursuant to his duties under the Bankruptcy Code and more specifically as authorized by the Order, is required to take steps to market and sell the Residence.

### 2. The "Legitimate" Claims in the Case.

The Debtors claim that the only "legitimate" unsecured claim is in favor of Capitol One, and that the "amended claim of Real Time Resolutions is not a valid claim." Opposition at 3.

The Debtors claim today contradicts their own prior statements under penalty of perjury, in their F-Schedule that the claim of JP Morgan Chase Bank in the amount of $104,696 is unsecured, and in their Statement of Financial Affairs (at No. 5), that the property securing the loan, 2289 Autumn Moon Way, Turlock, California (the "Autumn

///

Moon Property"), was subject to the lender's foreclosure sale in 2012. The foreclosure of course would have terminated any security interest in the Autumn Moon Property.

Today, the Debtors have yet another story, apparently that, by way of an unsigned, unauthenticated "Loan Modification Agreement" between JP Morgan Chase Bank and one Jimmy C. Cloninger, that the lender continues to have a security interest in the Autumn Moon Property. See Loan Modification Agreement, submitted as Exhibit "C" to the Opposition (unauthenticated and not signed by party charged). But the Debtors fail to state a critical fact: The Autumn Moon Property is not an asset of the bankruptcy estate. And thus the Debtors fail to explain why the RTR claim is improper, where the Debtors offer no evidence that the lender ever released the Debtors from liability on the underlying promissory note. As such, there is no reasonable ground on which an objection to Claim No. 1 would be based.

Finally, even if the allegation that Claim No. 1 is not a "valid claim" is accurate, it in no way justifies the Debtors' failure to object to the claim for a period of months while they worked instead to frustrate the Trustee in his reasonable efforts to liquidate assets to pay allowed claims in the case.

### 3. The Debtors' Assertion That They Were Required To Do Nothing More than Allow the Trustee to Inspect the Residence Once.

In the Opposition, the Debtors assert as follows:

> A close reading of the Court Order reveals that the Court only ordered an inspection of the premises on October 9, 2014 at 10:00 a.m.

Opposition at 4, ll. 8-9.

This is yet another misdirection by the Debtors, who do not specifically identify the "Court Order" under discussion. Nor do they mention that the Debtors' intransigence made necessary two separate orders that attempt to correct the Debtors' behavior. As discussed above, the September 8 order expressly requires the Debtors to give the Trustee access to the Residence at three dates and times, and "such other reasonable times thereafter as requested by the Trustee." This directive, which the Debtors have ignored, only makes sense where the Trustee's broker, as repeatedly

explained to the Debtors and to their counsel, needs to show the Residence to any number of potential buyers at times that cannot be anticipated, and needs to have the Residence exposed to the market in a reasonable fashion.

Thus, the Opposition refers only to the court's second order, which was entered after the Debtors failed to make the Residence available on any of the three dates previously selected by the Debtors' counsel. The Debtors' statement, that an undefined "Court Order" merely required the Debtors to let the Trustee see the Residence on October 9, 2014 at 10:00 a.m., as if this is the only order in play, is misleading.

### III. CONCLUSION

The Trustee filed the Motion only after clearly notifying the Debtors and counsel of their failure to comply with the Order, after giving them ample time to comply, and after taking at face value the representations of counsel that the chapter 7 case would be converted to another chapter. The Trustee's efforts to prevent further expenses and delay have not born fruit, making the Motion necessary. The Debtors have not rebutted the Trustee's clear and convincing evidence of the Debtors' contempt, and he therefore requests that the Motion be granted without delay.

Respectfully submitted,

Dated: Nov. 11, 2014

MEEGAN, HANSCHU & KASSENBROCK

By: _____
Anthony Asebedo
Attorneys for the Trustee