THOMAS O. GILLIS, SBN 40186
ATTORNEY AT LAW
1006 H STREET, SUITE 1
MODESTO, CALIFORNIA 95354
TEL (209)575-1153
FAX (866)750-5566

Attorney for Debtors:
RAMON LOMELI and MARIA LOMELI

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
MODESTO

In Re:

    RAMON LOMELI and
    and MARIA LOMELI

    Debtors.

_____/

CASE NO. 14-90358-E-7
DCN No:   TOG-7

DATE: February 12, 2015
TIME: 10:30 a.m.
Dept:   1200 I Ste., Ste 4,
        Modesto, CA

JUDGE: HON. Ronald H. Sargis

## DEBTORS' OBJECTION TO CLAIM #1-2 FILED BY REAL TIME RESOLUTIONS AND REQUEST FOR SANCTIONS FOR FILING THE CLAIM

Debtors hereby object to the amended claim of Real Time Resolutions and request sanctions on the following basis:

### I.  INTRODUCTION

1. On April 20, 2007, Debtor and Jimmy C. Cloninger signed a note and second mortgage in favor of Washington Mutual, secured by property located at 2289 Autumn Moon Way, Turlock, CA. The note was for $105,000. The first

1

property was also held by WaMu Mortgage. It was about $350,000 (see declaration of Debtor).

2. On February 28, 2007, Debtors sold the property to Jimmy C. Cloninger who presently resides on the property and still owns said property (see Exhibit A, Grant Deed).

3. Debtor had no interest in said property on the date of filing their Bankruptcy petition.

4. However, Debtor remains on said second mortgage lien as obligor.

5. On January 25, 2013, Mr. Cloninger executed a mortgage modification agreement with Chase Mortgage (see exhibit B). Debtors did not agree to, or sign said mortgage modification. (see Declaration of Debtor).

6. Said modification was entered into as part of a confidential settlement of the action <u>Cloninger vs. WaMu, Case #651796, Stanislaus Superior Court</u>.(see Exhibit C settlement agreement, redacted).

7. Said modification agreement modified the original note and mortgage terms to the financial detriment of Debtors without their consent (see declaration of Debtor).

## II. **ISSUES PRESENTED**

1. Can a creditor who owns a second mortgage take action, i.e. file a claim to collect said obligation prior to a foreclosure of the property?

2. If said creditor takes action to collect, i.e. files a claim, on said debt prior to foreclosure, are they liable for sanctions?

3. Can a secured creditor agree to a mortgage modification without the agreement and signature of one of the obligors?

4. If modified without a signature of the obligors, is that mortgage still viable with respect to the non signing obligor?

### III. ANSWERS TO THE ISSUES PRESENTED

As discussed infra, answer to Issues 1, 3 and 4 of the above issues are, no. The answer to issue 2 is, yes, Debtors can recover sanctions from claimant..

### IV. THE AMENDED CLAIM OF REAL TIME RESOLUTIONS IS INVALID UNDER CALIFORNIA LAW, C.C.P. 726(b).

The "One-Action Rule" and the "Security-First Rule" specified in C.C.P 726(b) are analyzed in Chapter 4 "Code of Civil Procedure 726(a): the One-Action Rule" sections 4.1 to 4.66 of the two volume C.E.B. treatise, California Mortgages, Deeds of Trust and Foreclosure Litigation, Fourth Edition. Roger Bernhardt, published by C.E.B. (2014 update).

In case the Court or counsel doesn't have access to this treatise, relevant pages of treatise are set out here without being retyped in order to eliminate typing errors:

> **B. Purposes of CCP §726(a)**
> **§4.4    1. Antimultiplicity**
>
> The commonly ascribed purpose of CCP §726(a) is to protect a defaulting mortgagor from being harassed by a multiplicity of actions filed against it by the mortgagee. See *Salter v Ulrich* (1943) 22 C2d 263; *Savings Bank v Central Mkt. Co.* (1898) 122 C 28; *Felton v West* (1894) 102 C 266. As discussed in §4.1, however, multiplicity of actions was probably forced on creditors by the separation between law and equity, and it is unlikely that creditors found it in their interests to institute voluntary multiple proceedings to obtain a single recovery. Furthermore, pure multiplicity could generally have been avoided by a simple election-of-remedies doctrine, such as the New York statute initially contemplated. See §4.2.

See also Comment, *Mortgages & Trust Deeds: Enforcement of a Secured Debt in California*, 31 Cal L Rev 429 (1943). Despite its lack of historic support, however, debtor protection against multiplicity is treated as the main purpose of §726(a), forcing the lender to elect either a judicial foreclosure (see chap 3) or a trustee sale (see chap 2). See *Bank of Italy Nat'l Trust & Sav. Ass'n v Bentley* (1933) 217 C 644; *Ould v Stoddard* (1880) 54 C 613.

### §4.5   2. Consolidated Foreclosure and Deficiency Judgment

The first sentence of CCP §726(a) provides that the one action that is permitted "shall be in accordance with the provisions of this chapter." The second sentence states that in the allowed action "the court may, by its judgment, direct the sale of the encumbered real property ... and the application of the proceeds of the sale to the payment of ... the amount due plaintiff." When combined with the first sentence's reference to one action, judicial foreclosure becomes the beneficiary's exclusive remedy. Remedies generally available to unsecured creditors are unavailable to real property secured creditors. *Porter v Muller* (1884) 65 C 512; *Winklemen v Sides* (1939) 31 CA2d 387, 402.

In addition to prohibiting the beneficiary from bringing a simple money action to recover the debt, CCP §726(a) also proscribes the common law remedy of "strict foreclosure," which by decree vested title in the property in the mortgagee without a sale. Under strict foreclosure, when the mortgagor failed to make the payment, the mortgagor's right of redemption was barred. *Warner Bros. Co. v Freud* (1903) 138 C 651. Under §726(a), the security is sold to produce proceeds that are used to satisfy the creditor's claim. Further monetary liability is then imposed only by a deficiency judgment if the foreclosure sale proceeds are insufficient to satisfy the debt. See chap 3. Similarly, §726(a) prohibits other forms of action (such as quiet title actions) that could terminate the debtor's equity of redemption without a sale. See *Walker v Community Bank* (1974) 10 C3d 729.

### III. EFFECTS OF CCP §726(a)

### A. Security-First Rule

### §4.6   1. Creditor May Be Required to Proceed Against Security First

The first major effect of CCP §726(a) is that it prevents a secured creditor from ignoring its security and suing on the underlying note or debt. A debtor who is confronted with such an action by the creditor may either successfully raise §726(a) as an affirmative defense (*Western Fuel Co. v Sanford G. Lewald Co.* (1922) 190 C 25) or assert it later as a sanction (*Walker v Community Bank* (1974) 10 C3d 729). Because the creditor must proceed against the security initially, this effect is variously labeled the "security-first," "security exhaustion," "collateral-first," or "primary fund" principle or rule. It is deemed violated when a secured creditor attempts—by judicial action or otherwise—to reach unpledged assets of the debtor before first exhausting the security. *Security Pac. Nat'l Bank v Wozab* (1990) 51 C3d 991; *Bank of America v Graves* (1996) 51 CA4th 607; *Pacific Valley Bank v Schwenke* (1987) 189 CA3d 134; *Bank of*

4

Case 14-90358    Filed 11/21/14

*America v Daily* (1984) 152 CA3d 767. The security-first rule of §726(a) is the linchpin of California's antideficiency scheme, which is the reason it is distinguished in this chapter from the other antideficiency rules discussed in chaps 4–5. For further discussion of the security-first rule, see §§4.7, 4.10–4.15, 4.19, 4.21, 4.27, 4.48.

### §4.7    2. Makes Obligation Conditional

The security-first rule of CCP §726(a) (see §§4.6, 4.12–4.22) makes the debtor's promise to pay a conditional obligation. As a result, a secured note does not unconditionally obligate the maker to pay it—merely to pay any deficiency that remains if the foreclosure sale of the encumbered property does not satisfy the note and a deficiency judgment is then obtained. *Otto v Long* (1900) 127 C 471, 477; *Commercial Bank v Kershner* (1898) 120 C 495; *Pacific Valley Bank v Schwenke* (1987) 189 CA3d 134.

### B. One-Action Rule
### §4.8    1. Prohibits Multiplicity of Actions

The other major effect of CCP §726(a) is that it prohibits a secured creditor from bringing more than one action to exhaust the security. Even a creditor that holds multiple security for a single obligation is limited by this "one-action" rule and must include all of its security in one foreclosure action. *Walker v Community Bank* (1974) 10 C3d 729. The omission of some of the security from that action may discharge the omitted security from liability for the obligation. Thus, both partial foreclosure actions and actions that ignore the security entirely (*e.g.*, actions on the underlying debt) violate §726(a).

The "one form of action" aspect of CCP §726(a) does not preclude the assertion of multiple causes of action within a single action if they are otherwise proper under §726. In *Scalese v Wong* (2000) 84 CA4th 863, an action for both judicial foreclosure and specific performance of the note obligation for the payment of money, the court permitted the successful creditor to elect specific performance because the debtor did not raise the security-first defense in CCP §726. See 24 CEB Real Prop L Rep 57 (Jan. 2001).

### §4.9    2. Not Applicable to Trustee Sales

A trustee sale is not considered an action, because no judicial involvement occurs. The antimultiplicity prohibition against judicial foreclosures

does not apply to successive nonjudicial trustee sales. (Nor does the trustee sale violate the security-first principle, because it is directed solely at the security given to the creditor.) When a trustee sale is involved, the debtor has no opportunity for direct judicial review of the sale's propriety, but that purpose has never been treated by the courts as a goal of CCP §726(a). See §§2.1, 2.10, 4.17. See also §§2.18–2.20.

### §4.10   3. Combined Effect of One-Action and Antideficiency Rules

Code of Civil Procedure §726(a) not only compels a creditor to seek judicial foreclosure (see §§4.8, 4.13) but also restricts the creditor's ability to then obtain a deficiency judgment. See Leipziger, *Deficiency Judgments in California: The Supreme Court Tries Again*, 22 UCLA L Rev 753 (1975). Without the restrictions of §726(a), a secured creditor could avoid most of the statutory limitations on deficiency judgments by ignoring the security and obtaining a judgment on the note (and then perhaps executing on the same property). Such a strategy, however, is barred by §726(a) because any monetary recovery after foreclosure is classified as a deficiency judgment. See *James v P.C.S. Ginning Co.* (1969) 276 CA2d 19. The various antideficiency rules (see chap 5) become even more compelling because they cannot be circumvented by alternative forms of action. In situations in which those rules completely prohibit deficiency judgments, the effect of §726(a) and the antideficiency rules is to limit the beneficiary to the real property security; in those circumstances, it becomes a security-only rule as well as a security-first and one-action rule.

**NOTE►** Some commentators suggest that the reference to "one form of action" added in 1933 emphasizes a facet of CCP §726(a) that is less profound than the two discussed in §§4.6–4.9. It recognizes that judicial foreclosure is the only proper procedure under California law for judicially enforcing the beneficiary's interest in the real property security. Hansen, *Wielding the Two-Edged Sword: What Every Attorney Needs to Know About Real Property Secured Transactions* (2 Parts), 22 CEB Real Prop L Rep 117, 153 (July, Aug. 1999).

### §4.11   C. Affirmative Defense and Sanction Aspect of CCP §726(a)

The debtor may assert CCP §726(a) in two different contexts. First, when the creditor commences an action for damages against the debtor

Case 14-90358    Filed 12/16/14    Doc 80

personally without first exhausting the security, the debtor may plead §726(a) as an affirmative defense (see §4.24). The debtor's failure to raise this affirmative defense during the action will result in a loss of the defense, and the creditor may elect the single remedy of a personal judgment against the debtor. See *Scalese v Wong* (2000) 84 CA4th 863, 869. Second, if the debtor fails to raise the affirmative defense, it may subsequently assert CCP §726(a) as a sanction, which bars the lender from further relief, including judicial foreclosure or selling the security under a power of sale even if the security has not been exhausted (see §§4.25–4.28).

### §4.12     IV. VIOLATIONS OF CCP §726(a)

A lender may violate CCP §726(a) if it seeks to

- use more than one judicial action to enforce the obligation;
- enforce a secured obligation by an action other than a judicial foreclosure action; or
- recover first from assets other than the secured assets.

For purposes of §726(a) an "action" is a civil proceeding under CCP §22 (*Security Pac. Nat'l Bank v. Wozab* (1990) 51 C3d 991), which is defined as

> an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.

This statutory definition clearly does not mention various self-help, extrajudicial activities a creditor may pursue, but the Supreme Court has held that even a "nonaction" may violate the security-first policy of CCP §726(a). See *Security Pac. Nat'l Bank v Wozab, supra* (bank offset triggered sanction effect of §726(a) (see §4.19) even though it did not constitute action under CCP §22). Thus the question of what is an action is driven as much by policy as by statutory language, heightening uncertainty in this area.

Sections 4.13–4.16 describe various violations of CCP §726(a).

At section 4.19 the treatise states; "any kind of creditor activity that seeks to appropriate unpledged assets of the debtor to retire the debt before the security itself has been first exhausted, violates 726(a). Citing <u>Security Pacific National Bank v. Wozab (1990) 51C 3rd 991</u>. (banker's offset); <u>McKean vs. German American Savings Bank (1987)118C 334</u> (banker's lien)".

7

## V. SANCTIONS FOR FILING THE CLAIM ARE REQUESTED AND ARE PROPER. UNLESS THE CREDITOR, REAL TIME RESOLUTIONS QUICKLY WITHDRAWS THEIR CLAIM, DEBTORS REQUEST SANCTIONS BE IMPOSED BY THE BANKRUPTCY COURT WITH DAMAGES AWARDED ACCORDING TO PROOF.

C.C.P. 726(a) provides for sanctions against a creditor who violates the Security-First Rule. The severity of the sanctions are explored in Munoz, Demystifying the One Action Goblin: Current Developments under C.C.P 726(a) 22 CEB Real Property L Rep 73 (apr. 1999).

## VI. THE SECOND MORTGAGE IS INVALID AGAINST DEBTOR BECAUSE THE NOTE AND MORTGAGE WERE MODIFIED WITHOUT DEBTOR'S CONSENT

In the case at bar, Chase Bank and the owner of the property executed a modification of the mortgages on the property that is the subject of the claim (See exhibit B). That agreement discharges the debt as to Debtors because they did not agree to, or sign the modification.

All of the obligors must agree and sign a mortgage modification. The execution of the document without the signature of the Debtors, released Debtors from further liability on the note and mortgage.

See Treatise, California Mortgages, Deeds of Trusts and Foreclosure Litigation, op. cit. at section 10.27:

> "Because a guarantor is exonerated in the event of any material modification of the principle obligation without consent, even if the modification is not prejudicial to the guarantor, the lender must take steps to ensure that any third party guarantors of the secured debt will be bound by the intended loan modification"

8

citing <u>V.I.P Agency v Duffy Electric (1979 92 CA3d849</u> (change in time of required payment and <u>Wexler v McLucas (1975) 48 CA 3rd Supp 9</u> (Lowering amount of instalment payment).

## VII. <u>CONCLUSION</u>

The claim of Real Time Resolutions is invalid and should be disallowed by the Court for the reasons stated.

Dated: December 16, 2014      */s/ Thomas O. Gillis*
                              THOMAS O. GILLIS
                              ATTORNEY FOR DEBTOR